We have a full calendar, but before we turn to the calendar, we have a motions calendar. And on that case, David Kelly versus Honeywell International, are both parties here? We are here, Your Honor. Okay, you can take your position at the council table. You can take your position at the council table. Mr. Kelly, counsel, you represent — I represent Honeywell, Your Honor. Good morning, and may it please the Court. I'm Brian Ortelier. I see no reason why not to just dive right into the four-prong test. I submit that a stay of proceedings in the district court pending a ruling from this Court on the merits will cause no harm to the plaintiffs. They are — They're being paid? They're being paid during the pendency? Yes. And, Your Honor, make no mistake. Honeywell is willing to unequivocally state on the record that it's willing to pay the benefits until the litigation is over. And I think the district court sort of seized on this notion that there was uncertainty in this regard, but we're willing to represent to this Court and to the district court that we will pay the benefits until this resolves. For both subclass A and B? For both subclasses. So if we — if your specifically acknowledges that concession, that's okay with you? That is fine. I don't hear my client yelling at me from the back, so I think we're all good. He or she hasn't jumped up and said, oh, no. I've had that happen once before. Okay. Unfortunately, he might be in the men's room. That's okay. All right. Turning to the public interest and impact on other parties, certainly if this Court agrees with our position on the merits, I submit, as it should, the documents allow Honeywell to terminate the benefits. That would obviate the need for the jury trial that the district court has scheduled. Subclass B? On subclass B. But the overarching legal question that we say, the integrated three documents, applies to both groups. So when this Court reaches that threshold question, and I submit, and hopefully rules in our favor, again, there's no need for a jury trial as to subclass B. Make no mistake, Your Honor, no matter who wins, there will be a second of appeal or who loses. So, again, to sort of put the district court proceedings on hold pending a ruling on the merits, again, sort of voids the burden to the courts. And, yes, the potential jurors in the district court. But this is an appeal on subclass A? Is that what you're saying? Well, we've now consolidated A and B. Right. We've got the first appeal. But if they prevail on subclass A, subclass B would be out? If they prevail on the subclass A issues, in other words, the overarching legal question, the three integrated documents, we're sort of back in the thick of things in the district court. Maybe I'm not following the Court's question. No. My question is if you prevail on subclass A, that's the appeal you're taking? The same legal issue applies to both A and B. The district court drew a distinction based upon when the B people who retired after the expiration of the collective bargaining agreement, she saw that as a meaningful distinction. And you don't? Well, perhaps. But the issue squarely before this court, again, is this overarching question that applies to both groups. And, again, the reason we think a stay makes such obvious sense here, if and when the court of appeals rules in our favor, the entirety of the case goes away. And no need to impanel it. The court of appeals, just for the sake of argument. I'm sorry? What if the court of appeals, for the sake of argument, affirms the lower court opinion on subclass A? Where does that leave subclass B? Okay. Well, then possibly there would be a district court trial on the ambiguity that the district court found. But there is a difference. I'm sorry? There is a difference. Oh, there is a difference, without a doubt. But what I'm saying is that in the first instance and the first appeal here from the first injunction, if the court rules in our favor, all of this goes away and there's no prejudice whatsoever to the plaintiffs who I've just represented. We are willing to pay the benefits in the interim. You're not going to seek reimbursement of any of those benefits at the conclusion of this case? Are we going to seek? What I'm saying is when our appeals are exhausted, when we lost, we will pay the benefits. Continue to pay the benefits because I've just represented. In the meantime, we'll pay the benefits. You won't seek any money back? Oh, no, Your Honor, no. All right. Good. Thank you. May I just ask whether this is, and maybe it's not teed up at the proper time, but been through the camp process here in this court? Mediation process? And I'm sorry, are we subject to that? Have you been through it? Oh, no. Sorry. No. No such thing. Right, Bill? We haven't been through Second Circuit mediation? No. We have, Your Honor. Oh, I'm sorry. He's right. At the point at which we had taken an appeal of the court's ruling as to subclass B, at that point we did have a mediation effort which did kind of succeed in narrowing the case. Okay. The short answer is we did. And I apologize. I simply forgot. That's perfectly okay. It is a process that continues to be open to you. It's not just a one-shot. Fair enough, Your Honor. I suppose my time at counsel worked that out, and we don't want to know the result. But it's a useful process sometimes when you're here. Well, let me say in conclusion, each of the four prongs I think clearly supports the entry of a stay. And most importantly, with the representation that we're willing to pay the benefits in the meantime, it makes abundant sense. It avoids the imposition of all of this on a jury and the possibility of a second appeal to this Court. So I respectfully ask that a stay be entered, and thank you so much for your time. Thank you. Thank you. Counsel, you represent subclass B, correct? And subclass A, yes. Oh, and subclass A people? Yes. What's your objection to a stay? Our objection, we — our primary objection to the stay, Your Honor, is that if the case goes forward to trial in February, the appeal as to subclass B will go away, whatever the result is. And that in the normal course, we believe, will occur before this Court decides the appeal pending before it now as to subclass B. Do you believe they're the same issues in both cases? The issue as to whether the benefits are vested, which is the principal issue, I agree that that issue is present in both cases. And that if, in fact, you decide that in favor of Honeywell, both cases are over. Doesn't that argue for a stay in terms of judicial economy? It might if there were any real chance that they would succeed on the vesting issue. And for that, I won't belabor it, but I would point the Court to the brief, the one-page letter brief we filed a day or two ago at Docket 190. They have no chance of succeeding. I mean, this is let's hurry up and get a decision from you as to whether in a case where there's a specific promise of lifetime benefits, the benefits are lifetime. Would you be any worse off, subclass B, if this Court affirmed, the district court below? You wouldn't be any worse off. You would get your trial then, too. That's right. We would get our trial, but then we would have a trial and probably go up on appeal, no matter who won, based on a final judgment. We would not be litigating a preliminary injunction with the possibility of a later appeal as to the final judgment as to subclass B. I mean, that's our concern. If this Court decides in the normal course, as I said before, the case will be over as to subclass B before this Court in the normal course issues a decision. In fact, if the Court, what we think makes sense is if the Court were to schedule this case for oral argument in March, the case is going to go away in February one way or another. There will then be an appeal, admittedly, I mean, or presumably, but there's going to be that appeal in any event. And why have this Court and the parties jockey as to whether a preliminary injunction was appropriate on a not complete record when this Court could wait, decide the vesting issue, and then after the trial decide the subclass B issue? That is going to happen in any event. Sotomayor, would the decision in subclass A be dispositive in subclass B? No. Okay, then. So there has to be two trials in any event. That's right. No, I agree. There has to be two. Well, not two trials. There has to be two findings. Yes. Two findings. So this motion is all about in what order this Court and the district court will hear the cases. That's right. And from our perspective, I'm in the position I normally am in where there's a preliminary injunction pending, and that is if I can get a final judgment before the preliminary injunction is decided, I've obviated the necessity to deal with the preliminary injunction standards and all that goes with it. Just one other point, and that is this case involves retirees who have been retired by definition for at least 20 years. And all we are doing is, and they are now out there wondering whether these are lifetime benefits. But they're all getting their benefits. They are all getting their benefits. And all this Court would be doing if it held up the subclass B trial would be delaying things further. We would then get a decision from this Court, and then we would do the discovery, which is about to start today if this Court denies the stay. And the trial would be of subclass B would be 6, 8, 9 months from now, as opposed to February, when it's going to be over. Is there a trial date set for February? February 6th to pick a jury with the trial to be concluded in the month of February. That's why I said go. Pick and go? Yes. I was not familiar with it, but I guess that would be the term, yes. That's why I suggested if the Court would make more sense, we think would be for this Court to simply schedule oral argument in March, which would be within the normal parameters. The last brief in this case was filed yesterday. And then the appeal 2075 would go away. All right, gentlemen. I wonder if we schedule the appeal in January. Then probably the trial would be occurring while this case is pending. A pending decision. In other words, we would have argued the case. The subclass A people won, right? Yes. Those are the folks who retired before the expiration of the collective bargaining agreement, right? Right. So they won. The Court gave them judgment. They said that there was an ambiguity as to them, and so therefore they were entitled to the benefits, right? No, the Court said the language was clear, that there was no ambiguity. The trial court said as to subclass A that the language was clear, that there was no ambiguity. They were entitled to the benefits. That's correct. That's right. And the B folks are the folks where it's unclear, and so therefore there was a denial of sovereign judgment, right? The B folks are folks who retired after the agreement expired that provides for the lifetime benefits. So there's that. I'm sorry. They did not get summary judgment. That's right. The question of whether they have vested rights to these continued health care benefits is still open because there's material issues of fact in the district court's mind, right? Yes. So the trial in February is just on class B, right? Yes. And yet the appeal, both sides seek an appeal from both determinations here, right? Well, not the second determination that hasn't been made yet. We don't. Well, no. The denial, both you seek a determination of the denial of summary judgment, and the other side seeks a determination from the grant of summary judgment, doesn't it? No. We have not taken any appeal that is pending as to subclass B. We have not. So you don't contest that there is a material issue of fact? Not at this point. Why don't you get your trial and be done with it for now and then worry about subclass A? That's what you want, right? I don't understand why you're worried about it. I mean, go to trial. That's what we want to do. He doesn't want it to stay. Okay, all right. That's what we want to do. Gentlemen, you've brought us a very interesting issue. We'll reserve decision. Try and get it out ASAP because of the... May I just ask a couple of questions since I'm presiding in January? Yes. Whether we would take an extra case. The appeal is ready to be heard. It's briefed? Yes. It just hasn't been set for calendar? That's right. Okay. And Mr. Ortulari? Yes, sir. Any problem with arguing the case in January? I don't know whether this can happen, but I'm just thinking out loud with you in terms of scheduling argument in the appeal. Certainly the sooner the better, but we do have the jury trial looming in February. Understood. It seems more easier to stay those proceedings and address these issues in a leisurely fashion. And, again, getting the benefits. And the one issue, and I'm afraid it's somehow getting lost in translation, the issue that we're presenting in the first of appeal, if we prevail on that issue, the entirety of the case goes away. Right. And that is the efficiency gained by now staying the litigation, rule on A, and we're all done. It's that simple. Because if the A folks lose, A folks lose every one. The B folks lose, too. The A folks win, however, there's still the B issue. Could I also add in terms of that, if you were to schedule argument in January, although I think it would be preferable to do it in March because it would go away, if you did it in January, that's consistent with everybody's schedules because under the court's order, we are going to do discovery depositions the next two weeks, we are going to submit a final pretrial order just before Christmas, and nothing goes on in January at the trial level. May I make one observation? Sure. I have no idea what he speaks to when he says all will go away. We will still have the need to present the issues which are currently before the court on subclass A. Right. If we lose the jury trial, we're right back. If we affirm the district court on subclass A, where you lost. And we go try B. You still. We win on A, and I submit it to the chief. I understand. Thank you. We have to move our calendar along. Thank you both very much. Thank you. The judge wants to keep his clerks busy over the holiday season, so he wants to do that.